## UNITSD STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

MAKARIOS BROWN : CIVIL ACTION NO. 11-cv-579

VERSUS : JUDGE WALTER

N. BURL CAIN : MAGISTRATE JUDGE KAY

### REPORT AND RECOMMENDATION

Before the court is an application for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 filed *pro se* by Makarios Brown (hereafter "petitioner"), a prisoner in custody of the Louisiana Department of Public Safety and Corrections currently incarcerated at the Louisiana State Penitentiary at Angola. *See* Doc. 1. This matter is referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the court.  For the following reasons **IT IS RECOMMEDED** that the application be **DENIED**.

### I.
### FACTS AND PROCEDURAL HISTORY[1]

This case arose out of a May 25, 2005 incident in which petitioner was arrested after two police officers, Agents Chad Denham and John Witham, noticed him participating in what appeared to be drug related activity. During a patrol, the officers observed petitioner and two other men on a street corner and noticed petitioner move away quickly at their approach. They saw petitioner pull something from his waistband or pockets and hide it in a trash can on the corner. Agent Denham attempted to address petitioner but petitioner ran away. Denham chased him on

---

[1]Page numbers listed in citations to this record reference the number found in the banner of the document as it is assigned by CM/ECF and does not refer to any page number that may have been assigned by another source.

foot and notified Agent Witham of his flight and of the direction in which he was fleeing. During the chase the officers noticed petitioner trying to take something from his pocket. Agent Witham ordered the petitioner to stop and, when he did not comply, Witham activated his Taser which caused petitioner to drop to the ground. As he fell the officers observed a small package (later determined to contain marijuana) fall away from his person. After the defendant was handcuffed and informed of his rights, Agent Denham returned to the trash can in which they had earlier seen petitioner attempt to hide something. Therein Denham recovered a .45 caliber semiautomatic pistol which was later admitted into evidence at trial. *State v. Brown*, 966 So. 2d 727, 739-40 (La. App. 2 Cir. 09/26/07).

At trial, both officers and the defendant testified. The defendant admitted multiple misdemeanor convictions, a conviction for armed robbery, a conviction for possession of Schedule II CDS, a conviction for possession of Schedule II CDS with intent to distribute, and a conviction for possession of a firearm by a convicted felon. *Id.*

### A.  Conviction and Direct Appeal

On October 12, 2005, a jury convicted petitioner of illegal carrying of weapons while in possession of a controlled dangerous substance (La. Rev. Stat. 14:195(E)) and with possession of a firearm by a convicted felon (La. Rev. Stat. 14:95.1). Thereafter, he was adjudicated a second felony offender on the possession of a firearm by a convicted felon charge, and the court imposed the maximum sentences allowable: thirty years imprisonment for the possession of a firearm by a convicted felon conviction and ten years imprisonment for the illegal possession of weapons while in possession of a CDS conviction. *Brown*, 966 So. 2d at 737.

Petitioner then appealed his convictions to the Louisiana Second Circuit Court of Appeal raising six assignments of error: (1) that there was insufficient evidence to prove guilt of the

offenses with which he was convicted, (2) that the trial court erred in finding him a habitual offender, (3) that the sentences imposed were excessive, (4) that the crimes for which he was convicted contain the same elements and thus his convictions for both violated his constitutional rights against double jeopardy, (5) that the trial court erred in denying his motion for mistrial, and (6) that the trial testimony of his parole officer was highly prejudicial and improper. Doc. 14, att. 6, pp. 100-101.[2]  The Louisiana Second Circuit affirmed his convictions and sentences. *Brown*, 966 So. 2d 727. Petitioner thereafter requested review from the Louisiana Supreme Court but the request was denied without comment on April 18, 2008.  *State v. Brown*, 978 So.2d 347 (La. 2008). It does not appear from the record that petitioner sought further relief from the United States Supreme Court.

### B.  State Collateral Review

Petitioner sought collateral relief through the State of Louisiana by filing an application for post-conviction relief in the First Judicial District Court for Caddo Parish on November 24, 2008. Doc. 14, att. 5, pp. 197-236.  His claims therein were: (1) that the chain of custody of the firearm submitted into evidence was not properly established and therefore, the trial court erred in failing to find it inadmissible, (2) that the trial court erred in denying his motion for a mistrial based on an alleged *Brady* violation with respect to photographic evidence of the handgun recovered by Agent Denham, (3) that defense counsel was ineffective for failing to object to, investigate, and file a motion to suppress with respect to the introduction of the handgun into evidence at trial, (4) that defense counsel was ineffective for failing to call as witnesses at trial the two men with whom he was standing when Agents Denham and Witham first approached, and (5) that his appellate

---

[2] The record provided to us does not contain petitioner's brief submitted on direct appeal to the Louisiana Second Circuit, but the claims listed above are specifically described in his writ application to the Louisiana Supreme Court. *See* Doc. 14, att. 5, pp. 91-137.

counsel was ineffective for failing to assign as error and raise the issue of the trial court's alleged improper failure to grant a mistrial. *Id*. at p. 214. The state district court judge denied petitioner's application finding that the trial court did not err in any manner alleged and that petitioner had failed to meet his burden of showing ineffective assistance of counsel.  Doc. 14, att. 6, pp. 285-89. The court's ruling was signed by Eugene W. Bryson, Jr., the Judicial Administrator for the First Judicial District Court of Caddo Parish, "for" and on behalf of Judge Michael A. Pitman. *Id* at p. 289.

Petitioner timely sought review of the district court's ruling in the Louisiana Second Circuit Court of Appeal.  Doc. *Id.* at pp. 290-94.  On February 18, 2010, the court of appeal denied the writ stating that

> …One of applicant's claims has been fully litigated on appeal and, therefore, is denied. La. C.Cr.P. art 930.2; *State v. Berry*, 430 So. 2d 1005 (La. 1983). The petitioner in an application for post-conviction relief shall have the burden of proving that relief should be granted. La. C.Cr.P art. 930.2; *State v. Berry*, *supra*. The applicant's other three claims are completely lacking in support and, therefore, are denied.

*Id*. at p. 296. Thereafter, petitioner filed an application for supervisory writs with the Louisiana Supreme Court and that application was denied without comment on February 25, 2011.  *State ex rel. Brown v. State*, 57 So. 3d 1028 (La. 2011).  Doc. 14, att. 7, p. 184.  All issues raised in the petition for collateral review filed with the district court and with the court of appeal in petitioner's writ application to it were also raised in the writ application to the state supreme court.

## C. *Habeas* Application

The instant *habeas* petition was mailed on March 30, 2011, and was filed in this court on April 11, 2011. *See* Doc. 1. Herein, petitioner raises, word-for-word, the exact same claims and arguments he raised on direct appeal and on collateral review in the state courts. As such, petitioner maintains that he is entitled to federal *habeas* relief because:

(1)     There was insufficient evidence to support his convictions. Doc. 1, att. 3, pp. 6-9;

(2)     The trial court erred in finding that petitioner was a habitual offender. *Id*. at pp. 9-10;

(3)     The sentences imposed were excessive. *Id.* at pp. 10-12;

(4)     The crimes for which he was convicted consist of the same elements and thus his convictions for both constituted double jeopardy. *Id*. at p. 12;

(5)     The trial court erred in Denying Petitioner's Motion for a Mistrial. *Id*. at pp. 12-13;

(6)     The parole officer's trial testimony was improper and highly prejudicial. *Id*. at 13;

(7)     The judicial administrator rather than the district judge signed the ruling on his application for post-conviction relief and thus it should be reversed. *Id.* at pp. 18-19;

(8)     The hand gun was admitted into evidence in this case without a proper chain of custody being established. *Id*. at pp. 26-28; and

(9)     He was denied effective assistance of counsel at both the trial and appellate levels because:

   a.   His trial counsel failed to object to, conduct an investigation of, and file a motion to suppress the hand gun introduced into evidence at trial;  *Id*. at pp. 24-30, 35-39;

   b.   His trial counsel failed to investigate and call two key witnesses at trial. *Id.* at pp. 39-44; and

   c.   His appellate counsel failed to assign as error and raise as an issue on direct appeal the trial court's alleged improper failure to declare a mistrial. *Id*. at pp. 31-35.

## II.
### LEGAL STANDARDS ON HABEAS REVIEW

#### A.  General Principles

Federal courts of the United States have jurisdiction to entertain applications for writs of *habeas corpus* on behalf of a person in state custody only if that person "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

When a state district court adjudicates a petitioner's claim "on the merits," this court is to review the state court adjudication under the deferential standard of 28 U.S.C. § 2254(d).  *Corwin v. Johnson,* 150 F.3d 456, 471 (5th Cir. 1998).  That statute provides that, when a state court has reached the merits of a constitutional claim, a writ of *habeas corpus* shall not be granted with respect to that claim unless the state court's adjudication resulted in a decision that was either:  (1) contrary to clearly established federal law or involved an unreasonable application of that law; or (2) was based on an unreasonable determination of the facts in light of the evidence before the state court.  28 U.S.C. § 2254(d).

The first standard—*i.e.* whether the state court's adjudication was contrary to or involved an unreasonable application of clearly established federal law—applies to questions of law as well as mixed questions of law and fact.  A petitioner must demonstrate that the "fair import" of the state court decision shows that the court failed to apply the controlling federal standard.  *Early v. Packer*, 123 S.Ct. 362, 365 (2002) (*per curium*).  The decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Harrington v. Richter*, 131 S.Ct. 770, 784 (2011).  A decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth [by the Supreme Court], or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedents and arrives at a [contrary]

result . . . ."  *Bell v. Cone*, 125 S.Ct. 847, 851-53 (2005), quoting *Williams v. Taylor*, 120 S.Ct. 1495, 1519-20 (2000) (internal quotations omitted).  In order for a state court's application of federal law to be unreasonable, the application must be more than simply erroneous but rather so incorrect as to be objectively unreasonable.  *Dilosa v. Cain*, 279 F.2d 259, 262 (5th Cir. 2002).

The second standard—*i.e.* whether the state court's adjudication was based on an unreasonable determination of the facts in light of the evidence—applies to questions of fact.  It is insufficient for a petitioner to show that the state court erred in its factual determination but rather he must demonstrate that the factual determination was objectively unreasonable which is a "substantially higher threshold."  *Schriro v. Landrigan*, 127 S.Ct. 1933, 1939 (2007).  "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance."  *Wood v. Allen*, 130 S.Ct. 841, 849 (2010).  Rather, the petitioner must show that "a reasonable factfinder must conclude" that the determination of facts by the state court was unreasonable.  *Rice v. Collins*, 126 S.Ct. 969, 975-76 (2006).

### B.  Timeliness

Federal law imposes a one-year limitation period within which persons who are in custody pursuant to the judgment of a state court may seek *habeas* review in federal court.  28 U.S.C. § 2254(d)(1).  This limitation period generally runs from the date that the conviction becomes final.  *See* 28 U.S.C. § 2254(d)(1)(A).  The time during which a properly-filed application for post-conviction relief is pending in state court is not counted toward the one-year limit.  28 U.S.C. § 2254(d)(2); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir. 1999).  However, any lapse of time before proper filing in state court *is* counted.  *Flanagan v. Johnson*, 154 F.3d 196, 199 n.1 (5th Cir. 1998).

Furthermore the limitations period is not tolled for the period between the completion of state review and the filing of the federal *habeas* application.  See *Mayle v. Felix*, 125 S.Ct. 2562 (2005).  Accordingly, in order to determine whether a *habeas* petition is time-barred under the provisions of section 2244(d), the court must ascertain:  (1)  the date upon which the judgment became final either by the conclusion of direct review or by the expiration of time for seeking further direct review; (2)  the dates during which properly filed petitions for post-conviction or other collateral review were pending in the State courts; and (3)  the date upon which the petitioner file his federal *habeas corpus* petition.

Both the petitioner and the defendant have set forth the applicable dates in this case, the state has conceded the timeliness of this petition, and we have reviewed and confirmed it in the record.  Doc.1, att. 3, pp. 2-5; Doc. 14, att. 1, pp. 8-9.  Accordingly, we conclude that this petition is timely.

### C.  Procedural Default and Exhaustion of State Court Remedies

As preliminary matters, before we proceed to a consideration of the merits of the issues raised in the petition, we must also consider the doctrines of procedural default and exhaustion of state court remedies.

#### 1.  *Procedural Default*

When a prisoner has defaulted a claim by violating a state procedural rule which constitutes adequate and independent grounds to bar direct review in the United States Supreme Court, the prisoner may not raise that claim in a federal *habeas* proceeding absent a showing of cause and prejudice or actual innocence.  *Coleman v. Thompson*, 111 S.Ct. 2546, 2564-66 (1991).  A failure to satisfy state procedural requirements results in a forfeiture of a prisoner's right to present a claim in a federal *habeas* proceeding.  *Murray v. Carrier*, 106 S.Ct. 2639 (1986).  This is not a

jurisdictional matter but rather is grounded in concerns of comity and federalism because the doctrine ensures that federal courts give proper respect to state procedural rules. *Trest v. Cain*, 118 S.Ct. 478 (1997); *Coleman*, 111 S.Ct. at 2564-66.

Procedural default exists where (1) a state court clearly and expressly bases its dismissal of the petitioner's constitutional claim on a state procedural rule and that procedural rule provides an independent and adequate ground for the dismissal ("traditional" procedural default) or (2) the petitioner fails to properly exhaust all available state court remedies and the state court to which he would be required to petition would now find the claims procedurally barred, ("technical" procedural default). In either instance, the petitioner is deemed to have forfeited his federal *habeas* claims. *Bledsue v. Johnson,* 188 F.3d  250, 254–5 (5th Cir.1999) (citing *Coleman*, 111 S.Ct. at 2557, n. 1 and *O'Sullivan v. Boerckel*, 119 S.Ct. 1728 (1999)).

In order to determine whether a procedural bar exists, a federal court must look to the last reasoned state court decision regarding the claim for relief. *Ylst v. Nunnemaker*, 111 S. Ct. 2590, 2593-94 (1991). The doctrine presumes that a state court's express reliance on a procedural bar functions as an independent and adequate ground in support of the judgment.  *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1996).  However, often times a state court may not explain the basis for its decision.  In such a case, in order to determine whether the court made a ruling on the merits or on procedural grounds, the court can look to (1) the text of the state court order, and (2) the circumstances surrounding the order.  *Wilson v. Moore*, 178 F.3d 266, 273–74 (4th Cir. 1999).

There are, however a few instances in which a procedurally defaulted claim *is* subject to federal *habeas* review. First, "[i]f the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available." *Ylst*, 111 S. Ct. at 2593-94.  Second, as indicated above, procedurally defaulted claims

are reviewable if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 111 S. Ct. at 2564-66.

In order to establish good cause for a procedurally defaulted claim, the petitioner must show that "some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." *Murray v. Carrier,* 106 S. Ct. 2639, 2645-46 (1986). Showing prejudice for such a claim, requires the petitioner to first demonstrate that the claim arises out of an error committed at trial. *Id*. at 2648. The petitioner must then show "not merely that the errors at ... trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady,* 102 S. Ct. 1584, 1596 (1982) (emphasis in original). The petitioner cannot establish prejudice for a procedurally defaulted claim when the record includes overwhelming evidence of guilt. *See Wainwright v. Sykes,* 97 S. Ct. 2497, 2508 (1977).

### 2.  Exhaustion of State Remedies

As a matter of comity, *Ex parte Royall*, 6 S.Ct. 734 (1886),   the federal *habeas corpus* statute and decades of federal jurisprudence require a petitioner seeking federal *habeas corpus* relief to exhaust all available state court remedies prior to filing his federal petition. 28 U.S.C. § 2254(b)(1); *Rose v. Lundy*, 102 S.Ct. 1198 (1982); *Minor v. Lucas,* 697 F.2d 697 (5th Cir.1983); *Mercadel v. Cain,* 179 F.3d 271, 275 (5th Cir.1999); *Fisher v. Texas,* 169 F.3d 295, 302 (5th Cir.1999); *Whitehead v. Johnson,* 157 F.3d 384, 387 (5th Cir.1998).

In order to satisfy the exhaustion requirement, the petitioner must have "fairly presented" the substance of his federal constitutional claims to the state courts in a "procedurally proper manner." *Wilder v. Cockrell,* 274 F.3d 255, 259 (5 Cir.2001); *O'Sullivan v. Boerckel*, 119 S.Ct.

1728 (1999); *Magouirk v. Phillips,* 144 F.3d 348, 360 (5th Cir.1998) citing *Richardson v. Procunier,* 762 F.2d 429, 431–32 (5th Cir.1985); *Mercadel,* 179 F.3d at 275 citing *Dupuy v. Butler,* 837 F.2d 699, 702 (5th Cir.1988); *Carter v. Estelle,* 677 F.2d 427, 443 (5th Cir.1982); *Deter v. Collins,* 985 F.2d 789, 795 (5th Cir.1993). Moreover, each claim must be presented to the state's highest court "either through direct appeal or by state collateral review procedures," even when review by that court is discretionary. *Hatten v. Quarterman*, 570 F.3d 595, 605 (5th Cir. 2009) (citing *Morris v. Dretke*, 413 F.3d 484, 491 (5th Cir.2005)); *Castille v. Peoples*, 109 S.Ct. 1056 (1989).  In Louisiana the highest state court is the Louisiana Supreme Court. *See* LSA—Const. Art. 5, § 5(a)).

Thus, in order for a Louisiana prisoner to have exhausted his state court remedies, he must have fairly presented the substance of his federal constitutional claims to the Louisiana Supreme Court in a procedurally correct manner. *Nobles v. Johnson,* 127 F.3d 409, 420 (5th Cir.1997), *cert. denied*, 118 S.Ct. 1845 (1998). Exhaustion further requires that any federal constitutional claim presented to the state courts be supported by the same factual allegations and legal theories upon which the petitioner bases his federal claims, *Picard v. Connor*, 92 S.Ct. 509, 512 (1971), and general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion. *Gray v. Netherland*, 116 S. Ct. 2074 (1996). State prisoners do not 'fairly present' their claims "to a state court if that court must read beyond [the] petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material…that does so." *Baldwin v. Reese*, 124 S. Ct. 1347 (2004).

Ordinarily, a federal *habeas* court considers the merits of a petitioner's claim once it has been determined that a petitioner has exhausted his state remedies. However, 28 U.S.C. § 2254(b)(2) allows federal courts the discretionary ability to deny an application on the merits

notwithstanding an applicant's failure to exhaust his or her state remedies if the unexhausted claim is "patently without merit." *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Coningford v. Rhode Island*, 640 F.3d 478, 483-84 (1st Cir. 2011) (citing *Granberry v. Greer,* 107 S.Ct. 1671, (1987)).

### III.
### LAW AND ANALYSIS

Having already concluded that the instant petition is timely we will now consider whether the issues raised by petitioner are properly before this court (*i.e.* whether or not they have been procedurally defaulted and whether they have been properly exhausted in the state court) and, if so, whether the merits of petitioner's claims entitle to him federal *habeas* relief based on the standards set forth above.

### A.   Was there sufficient evidence to support petitioner's convictions?

Petitioner invokes *Jackson v. Virginia*, 99 S.Ct. 2781 (1979) contending that the evidence adduced at trial was insufficient to support his convictions. Specifically he claims that the "State failed to prove [petitioner] possessed a firearm while at the same time possessing a Schedule I narcotic [because] [t]he State did not rule out the reasonable hypothesis that one of the other two men [present at the scene] could have placed the pistol in the trash can." Doc. 1, att. 3, p. 9. He raised this same argument on direct appeal in state court and, applying the *Jackson* standard, the Louisiana Second Circuit rejected it. The Louisiana Supreme Court denied writs. Therefore, since petitioner's state remedies were properly exhausted on this claim, we turn to the merits.

In evaluating the sufficiency of evidence to support a conviction under *Jackson*, "the relevant question is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond

a reasonable doubt." *Jackson*, 99 S.Ct. at 2789. Since the Louisiana Second Circuit applied this

standard, we pay deference to that decision unless it was contrary to clearly established federal

law or involved an unreasonable application thereof; or unless it was based on an unreasonable

determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d). In considering

the claim, the court noted that:

> …Agents Denham and Witham testified that they saw the defendant take something out of his waistband and put it in a trash can just before beginning the pursuit [and] …both…observed a small package of marijuana fall away from his body.

> …when Agent Denham went back to the trash can after subduing the defendant, he retrieved a firearm…. Further, Agent Witham testified that he was talking to the two other men who were with the defendant before the chase until the defendant ran back towards the front of the house. Thus, it is unreasonable to believe that either of the men would have had time to hide a firearm in the trash can that Agents Denham and Witham had previously seen the defendant place something. Also, due to the close proximity in time between seeing the defendant place the firearm in the trash can and subsequently recovering the marijuana that he dropped, it is reasonable to infer that the defendant was in possession of the firearm while in possession of the marijuana.

> Further, the state presented sufficient evidence…of the defendant's 1994 conviction for armed robbery. Therefore, the state presented sufficient evidence for a rational jury to convict the defendant of possession of a firearm by a convicted felon…

*Brown*, 966 So. 2d at 745-46.  We cannot conclude that these findings were contrary to law or that

they resulted from an objectively unreasonable application of federal law. Nor do we think they

were based on an unreasonable determination of the facts in light of the evidence presented.

Petitioner has failed to show us otherwise. Therefore, petitioner's claim as to the insufficiency of

the evidence should be denied.

**B.   Did the trial court err in finding petitioner a habitual offender?**

Petitioner contends that the trial court erred in finding that he was a habitual offender

"because at the time he pled guilty in 1994 and 1998 [to the predicate offense(s)], he was not

advised that his convictions could be used to enhance a future sentence." Doc. 1, att. 3, p. 10. In asserting this claim, however, petitioner cites no law, either state or federal, that would support his argument. He raised this same allegation, *verbatim*, on direct appeal to the Louisiana Second Louisiana Supreme Court and to the Louisiana Supreme Court, again citing no law or legal theory that would suggest a federal basis for the claim. *Picard*, 92 S.Ct. at 512. Accordingly, petitioner has failed to "fairly present" a federal constitutional issue to the appropriate state court "within the four corners of his appellate briefing[,]" [doc. 14, att. 5, p. 105], and thus has not adequately exhausted his state remedies. *Castillo v. McFadden*, 399 F.3d 993, 1000 (9th Cir. 2005); *Baldwin*, 124 S. Ct. 1347. T

As such, the claim should be denied because it has been "technically" procedurally defaulted.  If petitioner wished to properly exhaust this claim, it could have been raised on collateral review but it was not and, under Louisiana law, petitioner had two years from the time his convictions and sentences became final (the Louisiana Supreme Court denied writs on direct appeal on April 18, 2008) to do so. Those two years have expired. *See* La. C. Cr. P. 930.8. Furthermore, he has not shown that he meets the exception to the procedural default bar by demonstrating good cause, or actual prejudice for his failure to exhaust. Accordingly, he is not entitled to federal *habeas* relief.

Nonetheless, we are permitted to consider the merits of a non-exhausted claim if it is patently without merit, and we find that it is in this case. 28 U.S.C. § 2254(b)(2). In *Lackawanna County Dist. Atty. v. Coss*, 121 S.Ct. 1567, 1574 (2001), the Supreme Court held that

> [O]nce a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid.... If that conviction is later used to enhance a criminal sentence, the defendant generally may not

> challenge the enhanced sentence through a petition under § 2254 on the
> ground that the prior conviction was unconstitutionally obtained.

*Id.* (citation omitted).

Thus, the petitioner in this case is attempting to do precisely what the Supreme Court has prohibited: contest an enhanced sentence by challenging the constitutionality of an earlier, non-reviewable predicate conviction via a § 2254 *habeas* petition. While the Court recognized two exceptions to this general rule: (1) where a petitioner was not appointed counsel on the first conviction in violation of the Sixth Amendment, and (2) where he or she can make a showing of actual innocence, the petitioner, here, has shown neither. The claim is patently without merit and should be denied.

### C.   Were the sentences imposed unconstitutionally excessive?

Petitioner asserts that his sentences were "the maximum sentence[s] allowable under the law for each of the individual offenses for which he was convicted[,]" that they amount "to a life sentence because [they] are to be served consecutively[,]" and that they are "grossly disproportionate to the crimes allegedly committed." Doc. 1, att. 3, p. 11. His argument, however is based entirely on state law as provided in the Louisiana Constitution. *Id.* Accordingly, petitioner has not exhausted his state remedies as to this claim because he has failed to assert a federal basis for it to the highest state court.  He made the exact same argument on direct appeal before the Louisiana Second Circuit and the Louisiana Supreme Court claiming that the sentences were excessive under Art. I, Sec. 20 of the *Louisiana* Constitution. He does so before this court as well. The Louisiana Second Circuit denied the claim purely on state law grounds and the Louisiana Supreme Court denied writs.

Thus, this was a state law issue decided by the state courts and we do not sit to determine state constitutional errors. In fact, it is well established that federal *habeas* relief does not lie for

errors of state law because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 112 S.Ct. 475, 479-480 (1991).  Moreover, petitioner failed to raise this issue on collateral review and he is prevented from doing so now because any further collateral review is time barred. La C.Cr. P. art. 930.8. Accordingly, the claim is procedurally defaulted and petitioner has not shown good cause or actual prejudice for his failure to exhaust it before the highest state court.

Nonetheless, to the extent that the petitioner is attempting to assert a federal constitutional claim, we find it is patently meritless. 28 U.S.C. §2254(b). In *Lockyer v. Andrade*, 123 S.Ct. 1166 (2003), the United States Supreme Court reviewed its decisions and rejected a *habeas* attack on two consecutive terms of 25 years to life for a third-strike conviction. The petitioner had a string of burglary, drug, and property-crime convictions capped by felony petty-theft after he stole approximately $150 worth of videotapes. The  sentence was not subject to *habeas* relief because it was  not  contrary  to  or  an  unreasonable  application  of  a  clearly  established  gross disproportionality principle set forth in Supreme Court holdings. The Court admitted that its precedents in the area were not clear, which makes it quite difficult to obtain *habeas* relief on an excessive or disproportionate sentence claim under the Section 2254(d) standard. *Id.* at 1172-73.

Here petitioner's crimes were more serious than those in *Lockyer* and there is nothing to indicate that the trial court did not have full knowledge of the petitioner's criminal history when it imposed 30 and 10 year sentences for the crimes at issue in this case.  If the petitioner in *Lockyer* could not gain *habeas* relief from his serious sentences for mere property crimes, then this petitioner is certainly not entitled to relief on an excessive sentence claim for his possessing a loaded firearm.

The claim should be denied.

**D.   Were petitioner's rights against double jeopardy violated when he was convicted of both charges against him?**

Petitioner further asserts that the two crimes for which he was convicted, "illegal carrying of a weapon and possession of a firearm by an ex-felon constitutes the same elements, thus violating the double jeopardy principles of the U.S. Constitution…." Petitioner raised this claim on direct appeal before the Louisiana Second Circuit and the Louisiana Supreme Court which denied writs. Moreover, petitioner specifically invoked a federal basis for relief in the state courts by relying on the double jeopardy clause of the U.S. Constitution and thus fairly presented a federal issue on that claim.  Accordingly, the petitioner adequately exhausted his state court remedies. We now turn to the merits.

The Louisiana Second Circuit applied federal law on direct appeal, and its determination is therefore entitled to deference under 28 U.S.C. § 2254(d). Relying on *Blockburger v. United States*, 52 S.Ct. 180 (1932) the court correctly noted that "the '*Blockburger* test,' states that two offenses are not the same for purposes of double jeopardy if each crime requires proof of an additional fact which the other does not." *Brown*, 966 So. at 755 (internal quotations omitted). The court then applied the test to the instant case and found the claim to be without merit:

> Applying the *Blockburger* test to these two offenses, they are clearly two separate offenses. The offense of illegal carrying of a weapon while in possession of CDS requires additional proof that defendant was in possession of CDS and the offense of possession of a firearm by a convicted felon requires the additional element that defendant had been convicted of an eligible felony. Because each of these offenses requires proof of an additional element not required of the other, the offenses of illegal carrying of a weapon while in possession of CDS and possession of a firearm by a convicted felon are two separate offenses under the *Blockburger* test.

*Id.* at 760. We do not find the Second Circuit's reasoning to be contrary to clearly established federal law nor is it an objectively unreasonable application thereof in light of the evidence considered. Petitioner's double jeopardy claim should be denied.

### E.  Did the trial court err in denying petitioner's motion for a mistrial?

Next, petitioner asserts that the trial court committed error when it denied his motion for a mistrial. This claim is identical to a claim raised on direct appeal, in petitioner's application for post-conviction relief before the First Judicial District Court for Caddo Parish, and now in this court. Specifically, petitioner states that:

> During trial, [petitioner's] attorney orally moved the court for a "mis-trial" because the district attorney displayed a photograph of a gun to the jury, without foundation for it's admissibility having been made pursuant to [Louisiana] Code of Evidence art. 104(c). Further, surprising [petitioner] as he had not been notified of the state's intention to offer said photograph, which was highly prejudicial and violated the surprise prohibitions of the U.S. Supreme Court mandate in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194…(1963), and thus constituted a mis-trial pursuant to La. C.Cr.P. Art. 775(3).

Doc. 1, att. 3, p. 13.

We interpret this as an attempt to ground his claim on separate theories, one state, and the other federal. Thus it is clear that petitioner's claim alleges a federal constitutional violation under *Brady v. Maryland*, 83 S.Ct. 1194 (1963) and that claim was raised, *verbatim*, in each court from which he sought relief, including the state supreme court. Therefore, we find that he "fairly presented" a federal issue to the highest state court, and thus has exhausted his state remedies. We must now turn to the merits.

The Louisiana Second Circuit considered the claim on direct appeal and applied federal law in rejecting it. Thus we pay deference to that determination as provided under 28 U.S.C. § 2254(d). Specifically, the court stated that

-18-

> In *Brady v. Maryland, supra,* the United States Supreme Court held that the state must produce evidence that is favorable to the accused and material to issues of guilt or punishment when requested to do so by the defendant. Because the photograph of the gun was not exculpatory and because defendant is arguing that showing the photograph was prejudicial, this issue is not subject to analysis under *Brady v. Maryland, supra* and its progeny.

*Brown*, 966 So. 2d at 760-61. We do not find the Second Circuit's reasoning to be contrary to clearly established federal law nor is it an objectively unreasonable application thereof in light of the evidence considered. Petitioner's claim should be denied.

As indicated, petitioner's only remaining argument in support of this claim is based on an alleged violation of the Louisiana Code of Evidence. That issue was fully litigated on direct appeal by the state courts and was not considered on collateral review pursuant to a state law bar on such review as provided in La. C. Cr. P. art. 930.4. *See* Doc. 14, att. 6, pp. 287-88.  Subsequently, the Louisiana Second Circuit and Louisiana Supreme Court denied writs. As we noted above, federal *habeas* courts do not sit to determine errors of state law as applied by the state courts. *Estelle*, 112 S.Ct. at 479-80. Thus, we are not permitted, and we decline to consider whether the trial court's denial of his motion to dismiss was a violation of the Louisiana Code of Evidence.

**F.   Was the parole officer's trial testimony improper and highly prejudicial?**

Petitioner's contends that his due process rights under the Fourteenth Amendment were violated when the trial court allowed testimony from his parole officer concerning other crimes and convictions specifically, that of his 1994 conviction for armed robbery. The testimony, he asserts, "eradicated" his constitutional entitlement to a presumption of innocence. Doc. 1, att. 3, p. 13.  Again, he asserted the exact same claim on direct appeal to the Louisiana Second Circuit and to the Louisiana Supreme Court which denied writs.

In considering the claim, the Louisiana Second Circuit found that, pursuant to La. C. Cr. P. Art. 841, the alleged error was not reviewable because petitioner had failed to object to the

testimony during trial. Thus, the Louisiana Second Circuit relied solely on procedural default, petitioner's failure to adhere to Louisiana's contemporaneous objection rule, to deny the claim. *Brown*, 966 So. 2d at 762. As we indicated above [see discussion *supra* at pp 8-10]. , "[t]he rule in this circuit is that, when a state court bases its decision upon the alternative grounds of procedural default and a rejection of the merits, a federal court must, in the absence of good 'cause' [for the default] and 'prejudice,' deny habeas relief because of the procedural default." *Hughes v. Dretke*, 412 F.3d 582, 592 (5th Cir. 2005) (citing *Cook v. Lynaugh,* 821 F.2d 1072, 1077 (5th Cir.1987)); See also *Steward v. Cain*, 259 F.3d 374, 377 (5th Cir. 2001) ("…when a state court relies upon [Louisiana's] contemporaneous objection rule to reject a prisoner's claims, federal habeas review of those claims is [generally] improper.") Again, however, an exception is provided where a petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 111 S. Ct. at 2564-66 (1991).

The petitioner here merely reasserts his procedurally defaulted claim *verbatim*, and does not attempt to show cause, prejudice, or a fundamental miscarriage of justice. Therefore, he has not shown that he is entitled to federal *habeas* relief. The claim should be denied.

### G.   Does the absence of the district judge's signature on the ruling denying petitioner's application for post-conviction relief require reversal thereof when the judicial administrator's signature was present?

Petitioner complains that the signature on the trial court's denial of his application for post-conviction relief was that of a Judicial Administrator rather than that of the district judge himself. Doc. 1, att. p. 18-19.  He cites to "section '6'" of the "Louisiana Rule of Court" to suggest that the signature of a judge, rather than a judicial administrator, is required on the denial of a post-conviction relief application. *Id*. at p. 18. Petitioner raised the exact same claim on collateral review

before the Louisiana Second Circuit and subsequently the Louisiana Supreme Court. Both denied writs.

We find that the petitioner has failed to exhaust his state court remedies. The claim, as it is presented, is completely lacking in legal support. It clearly does not raise a federal issue and it is questionable whether it even adequately presents an issue of state law. Presumably, petitioner's rather vague reference to the "*Louisiana* Rule of Court" is an attempt to raise a state law ground for relief but, as noted, he does not assert a federal constitutional basis for the claim. Accordingly, petitioner has not "fairly presented" a federal issue to the highest state court. Since both courts have denied writs he is procedurally barred from re-asserting the claim and thus giving rise to a "technical" procedural default. Petitioner has shown neither good cause nor actual prejudice for his failure to properly exhaust the claim by properly asserting a federal basis for it on collateral review.

Moreover, to the extent this is an attempt to raise a state law ground for relief, we note that the claim was presented to both the Louisiana Second Circuit and the Louisiana Supreme Court and both courts denied writs. *See* Doc. 14, att. 7, pp. 13, 184. We do not disturb the findings of state courts applying state law. *See Estelle*, *Baldwin*, *supra*. Petitioner's claim should be denied.

### H.   Was the hand gun admitted into evidence without a proper chain of custody?

Petitioner's next claim is a challenge to the admissibility of the handgun recovered by Agent Denham at the scene of the incident in question. The claim is identical to a claim he raised on collateral review in the state courts. As he did there, petitioner herein relies exclusively on state law to support an allegation that

> the state was not sure whether or not this was the same…gun that was alleged to have been found in the trash can, because there was neither a proper foundation established, nor was there a chain of custody established for the requisition of the hand gun to its introduction at the time of trial.

Doc. 1, att. 3, p. 27.

This issue was fully adjudicated on the merits by the state district court on collateral review and the Louisiana Second Circuit and Louisiana Supreme Court denied writs. In considering the claim, the district court on collateral review examined the trial testimony of both Agents Denham and Witham and found that, contrary to the petitioner's allegation, a proper foundation and chain of custody had indeed been established pursuant to the requirements of Louisiana law and found the petitioner's claim meritless. Doc. 14, att. 6, p.287. The petitioner failed to "fairly present" a federal constitutional issue to the appropriate state court, and thus failed to exhaust his remedies on this claim.

As we have noted above, we do not disturb the findings of state courts applying state law, *See Estelle*, *Baldwin*, *supra*. In addition, the claim is subject to a "technical" procedural default because his ability to properly exhaust his remedy is now procedurally barred because the both the Louisiana Second Circuit and the Louisiana Supreme Court have denied writs. Since petitioner has simply reasserted his procedurally defaulted claim, *verbatim*, he has not shown, nor has he attempted to show, good cause or actual prejudice for his failure to exhaust. The claim should therefore be denied.

**I. Was petitioner unconstitutionally deprived effective assistance of counsel?**

Finally, petitioner asserts the following Sixth Amendment representational deficiencies:

(1) His trial counsel failed to object to, conduct an investigation of, and file a motion to suppress concerning the hand gun introduced into evidence at trial; Doc. 1, att. 3 pp. 24-30, 35-39.

(2) His trial counsel failed to investigate and call two key witnesses at trial. *Id.* at pp. 39-44.

(3) His appellate counsel failed to assign as error and raise as an issue on direct appeal the trial court's alleged improper failure to declare a mistrial. *Id.* at pp. 31-35.

Each of these issues were raised, *verbatim*, in petitioner's application to the state court for post-conviction relief and each clearly relies on federal law as provided in *Strickland v. Washington*, 104 S.Ct. 2052 (1984) to assert that petitioner was denied his Sixth Amendment right to counsel. Doc. 14, att. 6, p. 165.

The district court on collateral review denied relief finding that petitioner had failed to meet his burden under *Stickland* and the Louisiana Second Circuit and the Louisiana Supreme Court subsequently denied writs without assigning reasons. Thus, it is clear, and in fact the defendant concedes, that these claims were properly exhausted at the state court level. Doc. 14, att. 1, p. 26. Accordingly, we are now bound to consider the merits of these claims, recognizing as we have throughout this discussion, the deference owed to state court applications of federal law. 28 U.S.C. § 2254(d).

The Sixth Amendment to the constitution embodies the rights of persons to a fair trial and a person's right to effective assistance of counsel is critical to preservation of those rights. *Powell v. Alabama*, 53 S.Ct. 55, 77 (1932), *Johnson v. Zerbst*, 58 S.Ct. 1019 (1938), and *Gideon v. Wainwright*, 83 S.Ct. 792 (1963). "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 104 S.Ct. at 2064. When assessing whether an attorney's performance was deficient, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 2065. Additionally, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 2068.

**1. *Trial Counsel's Failure to Conduct an Investigation, Object to, and File a Motion to Suppress the Hand Gun from being Introduced into Evidence at Trial***

Petitioner's first claim of ineffective assistance relate to his trial counsel's alleged improper conduct related to the admission of the handgun discussed in the previous section of this opinion (see discussion *supra* at Section *H*.). Relying on many of the same arguments he raised as to the admissibility of the firearm (see discussion *supra* at p. 22), he claims that his allegations clearly indicate that "Defense Counsel, Mr. Cucci rendered ineffective assistance…for failing to investigate the incongruity of the evidence in the State's custody…and to move the Court to suppress the evidence of the hand gun during pretrial proceedings." Doc. 1, att. 3, p. 28.  He then refers to testimony provided by Agent Denham at trial in which the officer denied that he saw a drug deal and denied that he saw a crime being committed. Doc. 1, att. 3, pp. 35-36.

On collateral review the state district court fully considered this same claim regarding defense counsel's failure to file a motion to suppress. Applying *Strickland*, and noting the "great deference [paid] to the trial attorney's judgment, tactical decisions, and trial strategy" and the "strong presumption that he or she exercised reasonable professional judgment[,]" the court found that petitioner had not met his burden to succeed on a claim of ineffective assistance. Doc. 14, att. 6, p. 288. Specifically, the court found that filing a motion to suppress on grounds that the search of the trash can was illegal (as petitioner alleged) would have been futile because

> [b]ased on the testimony of the officers and the circumstances surrounding the investigatory search, it is unlikely that the outcome of the case would be different had counsel filed a Motion to Suppress. Reasonable suspicion was articulated by the officers' testimony and the search was justified.  The search was lawful as a part of a protective sweep allowable under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868 (1968).

*Id.*

We do not find the district court's reasoning here to be contrary to federal law nor do we find it an unreasonable application thereof. Therefore, considering the *Strickland* standard as discussed above, we find that petitioner's ineffective assistance claim as to trial counsel's failure to file a motion to suppress should be denied.

While the state district court adequately addressed the "failure to file a motion to suppress" issue, it does not appear that it considered petitioner's claim concerning counsel's alleged failure to investigate. Since it was adequately exhausted, however, we are bound to reach the merits.

On this issue petitioner makes the general allegation that his trial counsel failed to "investigate the incongruity of the evidence in the State's custody prior to…trial from the evidence alleged to have been initially recovered by Agent Denham,…" and thereafter claims that "had he done so, a motion to suppress [would] have been filed in order to exclude the evidence [*i.e.* the hand gun recovered at the scene] that had absolutely no bearing on Petitioner's criminal proceedings." *See* Doc. 1, att. 3, pp. 28-29.

While he cites several cases from various circuit courts discussing the general duty to investigate and prepare, petitioner fails entirely to "allege with specificity what the investigation would have revealed[3] and how it would have altered the outcome of the trial[,]"as is generally required to succeed on an ineffective assistance claim for failure to investigate. See *Gregory v. Thaler*, 601 F. 3d 347, 352 (5th Cir. 2010). Thus, he has clearly not met his burden under *Strickalnd*.

Nor is it likely that he would have met that burden even if he had adequately supported it. As the government has aptly pointed out, ineffective assistance claims involving the failure to

---

[3] Petitioner is apparently attempting to suggest that an investigation would have revealed that the hand gun recovered from the scene and the hand gun presented at trial were two different firearms but he has not provided any specificity with respect to that assertion, let alone any evidence to support it. Furthermore, the trial testimony of Officers Denham and Witham overwhelmingly indicate that such an assertion is plainly incorrect.

investigate documentary evidence are not favored in federal *habeas* review because they tend to lead to broad speculation. *Sayre v. Anderson*, 238 F.3d 611, 615-16 (5th Cir. 2001) (citing *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986)). "[W]ithout a specific, affirmative showing of what the missing evidence…would have been, a habeas court cannot even begin to apply *Strickland's* standards because it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance." *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994). Here, it is clear that trial counsel's conduct was not unreasonable in light of the evidence presented herein. Petitioner's substantially unsupported suggestions to the contrary do not convince us otherwise. His claim should be denied.

### 2.  *Trial Counsel's Failure to Call Witnesses*

Petitioner's next ineffective assistance claim concerns his trial counsel's alleged improper failure to call two witnesses to testify during trial, namely, the two individuals who Agents Denham and Witham saw standing with petitioner just before he was apprehended. Additionally, interposed within this claim is more language tending to suggest yet another assertion of a failure to investigate. Again, however, Petitioner raised this claim before the state district court in his application for post-conviction relief and it was denied.

Applying *Strickland*, the court stated

> Petitioner's second claim of ineffective assistance of counsel is that trial counsel failed to call two witnesses. Petitioner alleges that these witnesses were relevant to his defense and that he was prejudiced by their absence. This claim also fails to meet the Strickland burden. Great deference must be given to the trial counsel's reasons for such decisions. Calling witnesses is trial strategy and not per se evidence of ineffective counsel. Slate v. Seay, 521 So.2d 1206 (La. App. 2d Cir. 2/24/88). See also Slate v. Dixon, 631 So.2d 94 (La. App. 2d Cir. 1/19/94), holding that the decision whether to call a particular witness is matter of trial strategy and is not per se evidence of ineffective assistance; effective counsel may, as matter of

> strategy, choose to seek stipulation of witness' testimony simply to avoid exposing witness to cross-examination and impeachment."

Doc. 14, att. 6, p. 289.  Moreover, in this circuit, "[c]laims of uncalled witnesses are disfavored, especially if the claim is unsupported by evidence indicating the witnesses' willingness to testify and the substance of the proposed testimony. The decision whether to present a witness is considered to be essentially strategic, and speculations as to what [uncalled] witnesses would have testified is too uncertain." *Gregory*, 601 F.3d at 352-53 (citing *Harrison v. Quarterman,* 496 F.3d 419, 428 (5th Cir.2007) and *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (internal citations and quotations omitted).

The instant petition includes nearly four pages of general allegations and arguments concerning alleged ineffective assistance for failure to call as witnesses the two men who were present with him at the scene of the incident in question. The petitioner assert,s and the record confirms, that he identified these two men in his trial testimony as "Ride Low" and "Big Nose" *See* Doc. 1, att. 3, pp. 39-43. However, absent from these assertions is any suggestion, let alone evidence, to show (1) that these two men would have been willing to testify and, if so, (2) what their testimony would have revealed.

Thus, our review of the record leads us to two conclusions: (1) that the state district court's findings on collateral review were not the result of an objectively unreasonable application of federal law under *Strickland*, and (2) that, in any event, the petitioner's claim for ineffective assistance based on uncalled witnesses is patently meritless. He has shown neither objectively unreasonable conduct, nor prejudice. Accordingly, petitioner's claim should be denied.

### 3.   *Appellate Counsel's Failure to Assign as Error and Raise as an Issue on Direct Appeal the Trial Court's Alleged Improper Failure to Declare a Mistrial*

Petitioner's final ineffective assistance claim consists of an allegation that his appellate counsel provided ineffective assistance by failing to assign as error the trial court's denial of his motion for a mistrial which was based primarily on the improper admission of a "highly prejudicial" photograph of the handgun into evidence at trial. Doc. 1, att. 3, pp. 33-34. On collateral review, the state district court refused to consider it. Finding that petitioner's claim had been "incorrectly assert[ed]," the court stated that "the Motion for Mistrial was evaluated and ruled on by the Second Circuit. Therefore, Petitioner's claim of…ineffective appellate counsel shall not be considered under La.C.Cr.P. art. 930.4(A)[4] [Louisiana statute governing post-conviction procedure], as the issue in question was fully litigated on appeal." Doc. 14, att. 6, p. 288.

On direct appeal, with respect to the trial court's denial of his motion for a mistrial, the Louisiana Second Circuit had found that

> …the admission of the photograph of the gun was not prejudicial to the defendant. The actual gun that was recovered from the trash can was admitted into evidence, and Agent Witham testified that he photographed the gun in the trash can where it was recovered. The defendant was aware of the evidence of the gun because his counsel had access to inspect both the gun and the police reports explaining how the gun was recovered. Therefore, the photograph of the gun did not surprise the defendant in a way that would create reversible error. The photograph of the gun was relevant to show the jury where the gun was recovered and to corroborate the testimony of Agents Denham and Witham that they observed the defendant put the gun in the trash can. Further, the photograph of the gun was merely cumulative to the other evidence presented. Accordingly, any failure by the state to provide the photograph of the gun during discovery did not

---

[4]

>   A.   Unless required in the interest of justice, any claim for relief which was fully litigated in an appeal from the proceedings leading to the judgment of conviction and sentence shall not be considered.

La. Code Crim. Proc. art. 930.4

constitute reversible error, and the trial court did not abuse its discretion in
denying the defendant's motion for mistrial.

*Brown*, 966 So. 2d at 762.

Here, petitioner has not set forth any evidence to suggest that he meets the *Strickland*
standard on this claim and, in light of the Louisiana Second Circuit's finding, it is highly unlikely
that any such evidence exists. Appellate counsel did not assign error on appeal because no error
was committed in the denial of petitioner's pretrial motion for a mistrial. Noting the strong
presumption that counsel's conduct falls within the wide range of reasonable professional
assistance[,]" *Strickland*, 104 S. Ct. at 2065, and considering the petitioner's complete lack of
evidence to suggest otherwise in this case, we find it clear that petitioner has not met his burden
to show either unreasonable conduct or resulting prejudice as required in *Strickland*. Furthermore,
the state courts' rulings on this issue were neither unreasonable nor contrary to law. The
petitioner's claim is without merit and should therefore be denied.

## IV.
### CONCLUSION AND RECOMMENDATION

For the foregoing reasons, **IT IS RECOMMENDED** that the application for the writ of
*habeas corupus* be **DENIED**.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have fourteen (14) days from
receipt of this Report and Recommendation to file any objections with the Clerk of Court.  Timely
objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS
AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN
(14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY
FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR,**

**THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

In accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  Within fourteen (14) days from the service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.  *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE this 20th  day of October, 2015.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE